UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GAIL M. CHERNOSKY | : | |
|     Plaintiff, | : | 3:17-CV-01047 (VLB) |
| | : | |
| v. | : | |
| | : | |
| AMICA MUTUAL INS. CO, | : | January 24, 2018 |
|     Defendant. | : | |

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION TO DISMISS

### I. Introduction

Before the Court is Defendant Amica Mutual Insurance Company's (Defendant) Motion to Dismiss Plaintiff's Complaint. [Dkt. 12 (Motion).] Plaintiff Gail Chernosky (Plaintiff) has opposed the Motion. [Dkt. 15 (Opposition).] For the reasons discussed below, Defendant's Motion is GRANTED.

### II. Factual Background

The facts alleged in the Amended Complaint [Dkt. 1 (Complaint)] are taken as true and construed in the light most favorable to Plaintiff for the purpose of a motion to dismiss. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Plaintiff owns and resides at 372 Bebbington Road, Ashford, Connecticut (the Property). Complaint at ¶ 1. Defendant is incorporated and has a primary place of business in Rhode Island. *Id*. at ¶ 2. Plaintiff made all required payments for a homeowner's insurance policy covering the Property from 2006 forward (the Policy). *Id*. at ¶¶ 3-4.

Plaintiff first observed visible cracking patterns in the Property's concrete on an unspecified date, and had her basement inspected by a structural engineer on January 6, 2016. *Id*. at ¶¶ 5-6. The engineer indicated a chemical reaction was

1

occurring within the concrete which would cause the structure to eventually fall. *Id.* at ¶ 7. Plaintiff submitted a claim for coverage under the Policy on an unspecified date. *Id.* at ¶ 9. Plaintiff asserts the Policy covers the Property's concrete condition under the provision covering "collapse," since losses due to chemical reactions are not listed among Policy exclusions. *Id.* at ¶¶ 10-11. The iterations of the Policy in effect from September 6, 2012 through September 6, 2017 contain the following language:[1]

**SECTION I – PROPERTY COVERAGES**

    **E.    Additional Coverages** . . .

        **8.    Collapse** . . .

        b.    Collapse applies only to an abrupt collapse.

        c.    For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

        d.    This Additional Coverage – Collapse does not apply to:

            (1)    A building or any part of a building that is in danger of falling down or caving in;

            (2)    A part of a building that is standing, even if it has separated from another part of the building;

---

[1] Defendant attaches to its Motion copies of all iterations of the Policy from 2006 through 2017. The Court may consider documents attached to, integral to, or incorporated by reference in the complaint. *See* Fed. R. Civ. P. 10(c); *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotations omitted). As the Policy is integral to and incorporated by reference into the Complaint, the Court considers it here. *See, e.g., England v. Amica Mut. Ins. Co.*, 3:16-cv-1951, 2017 WL 3996394, at *4 (D. Conn. Sept. 11, 2017) (considering insurance policies on motion to dismiss).

2

    (3)  A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

  e.  We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one of more of the following:

    (1)  The Perils Insured Against;

    (2)  Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

    (3)  Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

    (4)  Weight of contents, equipment, animals or people;

    (5)  Weight of rain which collects on a roof; or

    (6)  Use of defective materials or methods in construction, remodeling or renovation.

  f.  Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under e.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

 …

**SECTION I - PERILS INSURED AGAINST**

**A.  Coverage A - Dwelling And Coverage B – Other Structures**

1. We insure against direct physical loss[2] to property described in Coverages A and B.

2. We do not insure, however, for loss . . .

    b. Involving collapse, including any of the following conditions of property or any part of the property:

        (1) An abrupt falling down or caving in;

        (2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

        (3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above; except as provided in E.8 . . . or

    c. Caused by . . .

        (6) Any of the following:

            (a) Wear and tear, marring, deterioration;

            (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself; . . .

            (f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings . . .

---

[2] Plaintiff notes that the iterations of the Policy in effect prior to 2012 included the phrase "risk of" prior to "direct physical loss." However, the provisions relevant to this case are consistent across iterations: the language excluding coverage for collapse other than as defined in Section E8, the definition of collapse under Section E8, and the language excluding coverage for the list of events listed in Section A(2)(c), including deterioration, latent defect, and cracking. *See Liston-Smith v. CSAA Fire & Cas. Ins. Co.*, 2017 WL 6459552, at *6 (D. Conn. Dec. 15, 2017) (rejecting an argument that the inclusion of the term "risk" before "direct physical loss" expanded the scope of the policy in a relevant way in another case involving cracked concrete when exclusions existed for "settling, shrinking, bulging or expansion, including resultant cracking, of . . . foundations.")

[*See, e.g.*, Dkt. 12-13 (September 2016 – September 2017 Policy) at forms HO 00 03 05 11 and HO 01 06 01 13.]

Defendant denied Plaintiff's claim for coverage on March 21, 2017. *Id.* at ¶ 13. Plaintiff also alleges Defendant participates with the Insurance Services Office, Incorporated (ISO), an organization that collects data regarding claims shared by most, if not all insurance companies. *Id.* at ¶ 20. Through that participation, Defendant, "upon information and belief, has knowledge of the numerous claims and lawsuits that have arisen in this section of Connecticut . . . for issues concerning deteriorating concrete." *Id.* at ¶ 22. Plaintiff asserts Defendant regularly denies claims like Plaintiff's "in similar manners or on similar grounds or other grounds," even though those claims warranted coverage, "based on the aforementioned information received via ISO." *Id.* at ¶¶ 23, 25.

Plaintiff brought the instant suit alleging breach of contract, breach of the covenant of good faith and fair dealing, and violation of Connecticut's Unfair Trade Practices Act (CUTPA) and Connecticut Unfair Insurance Practices Act (CUIPA). Plaintiff seeks money damages, interest, attorney's fees and costs and other costs of the suit, and punitive damages.

### III. Legal Standard

To survive a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff" when deciding a motion to dismiss *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011). A court may, however, "choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).

IV. Discussion

Defendants move to dismiss counts one, two and, three of Plaintiff's Complaint for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). [Dkt. No. 14 at 1-2.] The Court addresses each count in turn below.

a. <u>Count One: Breach of Contract</u>

Defendant asserts the Complaint fails to state a claim for breach of contract because the Complaint does not state the Property's collapse was "abrupt" or the Property "cannot be occupied for its intended purpose" as a result of the claimed damage. Motion at 14.

An insurance policy "is to be interpreted by the same general rules that govern the construction of any written contract." *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 372–73 (2008). Any contract "must be construed to effectuate the intent of the parties, which is determined from the language used and interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Murtha v. City of Hartford*, 303 Conn. 1, 7–8 (2011) (quoting

6

Remillard v. Remillard, 297 Conn. 345, 355 (2010)); *Harbour Pointe, LLC v. Harbour Landing Condominium Ass'n, Inc.*, 300 Conn. 254, 260 (2011) ("In ascertaining the contractual rights and obligations of the parties, we seek to effectuate their intent, which is derived from the language employed in the contract, taking into consideration the circumstances of the parties and the transaction.").

Where the language of a contract is unambiguous, a court "must give the contract effect according to its terms." *Harbour Pointe*, 300 Conn. at 260 (quoting *Cantonbury Heights Condominium Ass'n Inc. v. Local Land Dev., LLC*, 273 Conn. 724, 734–35 (2005)). A contract is unambiguous when "its language is clear and conveys a definite and precise intent . . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity." *Id.* "[T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." *Id.*

Where the language of an insurance policy is ambiguous, such language must be construed against the insurance company that drafted the policy. *See Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.*, 247 Conn. 801, 806 (1999). However, any ambiguity in a contract "must emanate from the language used by the parties" and "a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself." *Murtha*, 300 Conn. at 9. "The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible

7

to do so . . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." *Harbour Pointe*, 300 Conn. at 261 (quoting *Cantonbury Heights*, 273 Conn. at 735).

The Policy is explicit in its definition of collapse: it is an "abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose." Policy at 29-31. Other courts which have evaluated policies with such a definition have found them to unambiguously deny coverage for mere cracking of concrete. *See, e.g.*, *Lynne Liston-Smith v. CSAA Fire & Casualty Ins. Co.*, 3:16-cv-510 (JCH) (Dec. 15, 2017) (unpublished); *Alexander v. Gen. Ins. Co. of Am.*, No. 3:16-cv-059 at Dkt. 22 (transcript of ruling from the bench). In each of those cases, the insured structure had cracked concrete due to a chemical reaction but was still standing, and in each instance the court found the policy excluded coverage.

While the Court is sensitive to Plaintiff's argument that the Premises is structurally unsound, that allegation is insufficient given the explicit definition of "collapse" in the Policy, which excludes from the definition any structure "that is in danger of falling down or caving in." Judge Underhill's explanation is particularly illustrative: "Let's use insect damage. There's termites in the house. No collapse. They're eating away; every day they're eating away. No collapse. They keep eating away. Finally, they eat enough that the beam falls. . . . Now there's coverage. Now you have a collapse or falling in." *Alexander*, No. 3:16-cv-059, Dkt. 22 at 14.

Plaintiff's assertion that the Policy's definition of "collapse" is ambiguous is unavailing, as the precedent Plaintiffs cite in support is readily distinguishable. In *Dalton v. Harleysville Worcester Mutual*, 557 F.3d 88, 93 (2d Cir. 2009), the policy at issue covered "direct physical loss involving collapse of a building or any part of a building caused . . . by . . . hidden decay" but noted that "settling, cracking, shrinkage, bulging or expansion" did not constitute "collapse." *Id*. at 90. The Second Circuit found the policy ambiguous as to whether collapse required "total or near total destruction" of the building or whether "substantial impairment of the structural integrity" was sufficient. *Id*. However, the *Dalton* Court explicitly stated the policy would not have been ambiguous if it had "contained express definitional terms . . . for example, that a collapse was 'an abrupt falling down or caving in' and that 'a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking.'" *Id*. at n.1.

Here, "collapse" requires "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose." The Complaint states the Premises is still standing and lived in by Plaintiff and does not allege that it has abruptly fallen down or caved in. Accordingly, the Complaint has not alleged that the Policy covered Plaintiff's loss.

Plaintiff also argues her loss warrants coverage because loss due to chemical reactions is not explicitly listed among the Policy's exclusions.

Judge Shea recently rejected Plaintiffs' argument, stating it "does not matter whether the originating event behind the cracking and deterioration was a chemical reaction; the exclusions in the Polic[y] make no exception for losses for which the cause is itself a product of a chemical reaction." *England v. Amica Mut. Ins. Co.*, 3:16-cv-1951, 2017 WL 3996394 (D. Conn. 2017)); *see also Agosti v. Merrimack Mut. Fire Ins. Co.*, 3:16-cv-1686, 2017 WL 3710786 (D. Conn. 2017) (stating claimants' "loss . . . clearly consists of settling, cracking, shrinking, bulging, or expansion of . . . foundations [or] walls . . . [and the] technical source of the cracking or bulging is irrelevant").

In *England*, as here, the plaintiff's insurance policy excluded losses "involving collapse" caused by, among other things, "deterioration . . . latent defect, . . . any quality in property that caused it to damage or destroy itself, [and] bulging or expansion, including resultant cracking." 2017 WL 3996394 at *2-3. The Court rejected the theory that a chemical reaction itself is covered as a loss "independent of any of its manifestations," because "loss . . . unambiguously require[s] some change to the detriment of the insured, and a chemical reaction – without any physical manifestations – does not fit that bill." *Id*. The only "loss" suffered was the deterioration and cracking of the basement walls, which were specifically excluded under the policy. *Id*. at *8.

Here, the only loss about which Plaintiff has offered evidence is the cracking of their concrete (due to a chemical reaction). That loss is explicitly excluded from coverage under the Policy.

Lastly, Plaintiff argues for coverage under the "reasonable repairs" provision of the Policy, which states Defendant "will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage." The District of Connecticut recently rejected this argument in *Liston-Smith v. CSAA Fire & Casualty Insurance Company*, 2017 WL 6459552, at *6 (D. Conn. Dec. 15, 2017). In *Liston-Smith*, Attorney Danforth advanced the same argument against a policy which was also found not to provide coverage. *Id*. The court reasoned that because the current condition of the Premises was not covered under the Policy, the coverage for reasonable repairs did not apply. *Id*. As in *Liston-Smith*, Plaintiff has not established that the Premises "is damaged by a Peril Insured Against," and accordingly the "reasonable repairs" section does not apply.

### a. Counts Two and Three: Bad Faith and CUTPA

In light of the dismissal of Plaintiffs' breach of contract claim, the Motion to Dismiss is also granted as to Plaintiffs' bad faith and CUTPA claims, which are not viable absent a breach of the underlying contract. *See Capstone Building Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 798 (2013) (explaining that a claim for "bad faith is not actionable apart from a wrongful denial of a benefit under the [insurance] policy"); *Roberts v. Liberty Mut. Fire Ins. Co.*, 2017 WL 3710062, at *14 (D. Conn. Aug. 28, 2017) (finding that, as with a claim for breach of the implied covenant of good faith and fair dealing, "a claim for violation of CUTPA/CUIPA cannot succeed in the absence of a viable claim for breach of contract").

V.  Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. The Clerk's Office is directed to close this file.

IT IS SO ORDERED.

                                                                          /s/
                                                  Hon. Vanessa L. Bryant
                                                  United States District Judge

Dated at Hartford, Connecticut: January 24, 2018